## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Shannon Q. Sturm )
) Case No. 10-34829
Debtor(s) )
)

### DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 12). The Debtor filed a response to the Motion, objecting to the Dismissal of her case. (Doc. No. 17). A Hearing was then held on the matter. (Doc. No. 18). At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to consider the matters raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit.

### BACKGROUND

On July 15, 2010, the Debtor, Shannon Q. Sturm, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). At the time she filed her petition for bankruptcy relief, the Debtor was married, and had no dependents. In the schedules she filed with her petition, the Debtor disclosed that she had $51,226.70 in unsecured debt, consisting entirely of credit-card obligations.

At the time she filed her petition, the Debtor also, as required by the Bankruptcy Rules, submitted an Official Form B22A, entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." This form implements the requirement of § 707(b)(2)(C), requiring a

In re: Shannon Q. Sturm
Case No. 10-34829

debtor to perform the 'means test' calculation of § 707(b)(2) so as to determine if granting relief in the case should be presumed to be an abuse.

In completing Form B22A, the Debtor represented that she was an Ohio resident and had a gross monthly income of $3,861.93; the Debtor also reported that her non-debtor husband had a gross monthly income of $3,473.00. Based upon these figures, the Debtor reported a combined gross annual income of $88,019.16, an amount which exceeded the state median income for a like size household.

Only debtors with household income above the state median income are subject to having their case dismissed based upon a presumption of abuse arising under § 707(b)(2). 11 U.S.C. § 707(b)(7). Moreover, a case will only be found to be presumptively abusive if the debtor's disposable income, as calculated over a five-year period, satisfies one of these two conditions: (1) the debtor's disposable income is greater than $11,725.00; or (2) although less than $11,725.00, the debtor's disposable income is greater than $7,025.00 and that amount will pay more than 25% of the debtor's unsecured debt.[1] On a per month basis, these presumptive abuse thresholds total respectively $295.42 and $117.08.

In applying the 'means test,' a debtor's disposable income is calculated by subtracting those expenses allowed by clauses (ii), (iii), and (iv) of § 707(b)(2)(A) from the debtor's current monthly income. A debtor whose income falls above the state median income is required to itemize these expenses by completing form B22A. Because the combined gross income of her and her husband exceeded the state median income, the Debtor completed Form B22A.

---

[1] Pursuant to 11 U.S.C. § 104, these amounts are adjusted every three years to reflect changes in the Consumer Price Index.

Page 2

In re: Shannon Q. Sturm
Case No. 10-34829

In completing Form B22A, the Debtor reported that she did not have any monthly disposable income, with the 'means test' formula yielding a deficit of ($888.18) per month. Accordingly, as her calculation on Form B22A did not yield any disposable income, the Debtor reported that no presumption of abuse arose in her case for purposes of § 707(b)(2). The United States Trustee disputes this conclusion, taking the position that the Debtor has a monthly disposable income of $1,455.28, well above the abuse thresholds, *supra*, of § 707(b)(2). (Doc. No. 19, Ex. F-8).

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the United States Trustee ("UST") to Dismiss is brought pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). These sections operate together, with § 707(b)(1) first setting forth the foundational mandate, providing that, where the granting of relief under Chapter 7 would be an abuse, the debtor's case is to be dismissed. In the specific language of § 707(b)(1):

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Page 3

In re: Shannon Q. Sturm
Case No. 10-34829

This provision serves the purpose of preventing debtors from simply walking away from their legal obligations by limiting Chapter 7 relief to only those debtors truly in "need" of such relief. *In re Oot*, 368 B.R. 662, 670 (Bankr.N.D.Ohio 2007).

Sections 707(b)(2) and 707(b)(3) set forth separate methodologies by which a determination of abuse is to be assessed under § 707(b)(1). First, under an objective 'means test' formula prescribed by § 707(b)(2), abuse will be presumed to exist when a 'disposable income' threshold is exceeded. In the alternative, § 707(b)(3) requires a court to undertake a subjective assessment of a debtor's financial situation, providing that abuse should be found to be present if it is determined that the debtor either filed their petition in bad faith or when the totality of the circumstances surrounding the debtor's financial situation demonstrate abuse. If either of the methods set forth in § 707(b)(2) or § 707(b)(3) then result in a finding of abuse, the case becomes ripe for dismissal under § 707(b)(1). *In re Longo*, 364 B.R. 161, 164 (Bankr.D.Conn.2007).

For the two methodologies prescribed in § 707(b) for assessing abuse, the Court, having reviewed the Debtor's calculation under the means test, finds that the dismissal of this case is warranted under § 707(b)(2). The reason for this conclusion rests upon a determination that, as put forth by the UST, the Debtor made at least two errors when performing her 'means test' calculation.

First, on the 'means test' formulation contained in Form B22A, the Debtor made too large of a marital adjustment. Second, on the 'means test,' the Debtor improperly took a deduction for a second vehicle. The basis for these conclusions is now explained in detail.

### Marital Adjustment

In order to determine whether the granting of relief in a Chapter 7 case is presumptively abusive as applied to § 707(b)(2), a debtor's "current monthly income" must be first ascertained.

Page 4

In re: Shannon Q. Sturm
Case No. 10-34829

Current monthly income is defined in § 101(10A), and is composed of two parts. The first part provides generally that "current monthly income" means:

> the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case . . ."

11 U.S.C. § 101(10A)(A). Section 101(10A), thus, begins by defining a debtor's "current monthly income" without reference to the income of any nondebtor spouse, limiting its breadth to only that of the debtor and a codebtor spouse, if any.

However, the second part of § 101(10A) operates as a modifier to this limitation by providing:

> The term "current monthly income"–
>
> > (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent)
> > . . .

11 U.S.C. § 101(10A)(B). Accordingly, as is the situation before the Court, where a debtor is married, but the debtor's spouse does not file for bankruptcy relief, the current monthly income of a debtor will include not only the debtor's income but that of the non-filing spouse provided that the income of the nondebtor spouse is paid toward the household expenses of the debtor or the debtor's dependents on a regular basis. This means that "[t]o the extent that a non-filing spouse's income is deemed to be a contribution to the debtor's household expenses, it will raise the debtor's current monthly income and increase the likelihood that the presumption of abuse will arise." *In re Travis*, 353 B.R. 520, 526 (Bankr. E.D.Mich. 2006)

Page 5

In re: Shannon Q. Sturm
Case No. 10-34829

Line 17 of Form B22A implements the definition of 'current monthly income' as provided in § 101(10A)(B). This line is entitled "Marital adjustment." The instructions for this line provide:

> enter on Line 17 the total of any income listed in Line 11, Column B that was NOT paid on a regular basis for the household expenses of the debtor or the debtor's dependents. Specify in the lines below the basis for excluding the Column B income (such as payment of the spouse's tax liability or the spouse's support of persons other than the debtor or the debtor's dependents) and the amount of income devoted to each purpose.

Line 17, thus, allows a debtor to exclude from the 'means test' formulation any funds which he or she contends their spouse does not contribute to the marital household on a regular basis. The effect of any monetary figure entered on this line is to reduce, on a dollar-to-dollar basis, the amount of 'disposable income' the debtor has available when assessing whether the debtor's 'disposable income' exceeds the abuse thresholds of § 707(b)(2).

In this matter, the Debtor claimed a marital adjustment on line 17 in the amount $3,473.00. Per the instructions for line 17, the Debtor specified the basis for this figure, providing the following itemization:

| | |
|---|---|
| Car -Gas | $140.00 |
| Car Insurance | $135.00 |
| Car Repair | $150.00 |
| Clothing | $53.87 |
| Credit Cards | $1,300.00 |
| Home equity loan | $1,250.00 |
| Life Insurance | $85.00 |
| Prescription Co-Pay | $70.00 |
| Property Taxes | $289.13 |

It is the position of the UST that the Debtor's marital adjustment on line 17 should be revised downward to $1,412.00, thereby resulting in an increase in the Debtor's disposable income by $2,061.00. For this position, the UST took issue with the Debtor's marital adjustment of $1,250.00

Page 6

In re: Shannon Q. Sturm
Case No. 10-34829

for a home equity loan, putting forth that this deduction should be reduced to $489.00. As well, the UST put forth that the Debtor should not be allowed to take a marital adjustment of $1,300.00 for her husband's credit card payments.

For the most part, the Court agrees with UST's assessment. As an initial matter, it is noted that the Debtor's overall marital adjustment of $3,473.00 has an obvious flaw: The amount of the adjustment corresponds exactly to the gross income of the Debtor's husband. As a result, the Debtor is, in essence, asserting that her husband does not, on a regular basis, contribute at all to the Debtor's household expenses. This is a *non sequitur*.

First, for those situations where separate households are maintained, § 707(b)(2) allows for the complete exclusion from the 'means test' of that income produced by the non-debtor spouse. This, however, is not the situation here, with the Debtor and her husband living in the same household. Second, under Ohio law, "[e]ach married person must support the person's self and spouse out of the person's property or by the person's labor." O.R.C. § 3103.03(A). Thus, where, as here, a nondebtor spouse enjoys an appreciable level of income, and lives with the debtor, some financial support would, in the language of the Code, necessarily be paid by the nondebtor spouse "on a regular basis for the household expenses of the debtor or the debtor's dependents[.]"

In this circumstance, where a nondebtor spouse is regularly contributing to the household expenses, courts have an obligation to scrutinize a debtor's marital adjustment on line 17 very carefully. *In re Trimarchi*, 421 B.R. 914, 923 (Bankr. N.D.Ill.2010) (holding that the non-filing spouse's expense for utility bills to heat the family's swimming pool was unreasonable). The line can be easily manipulated to produce a desired result. That is, the marital adjustment can be used by a debtor to shift household income, with a debtor claiming to pay a greater share of the household expenses than the nondebtor spouse.

Page 7

In re: Shannon Q. Sturm
Case No. 10-34829

In this matter, the Debtor did not produce any evidence even tending to show that her husband's monthly $1,250.00 payment on an equity loan did not go largely toward the Debtor's household expenses. To the contrary, the evidence in this case shows that the Debtor's spouse is the sole owner of the marital residence. The costs associated with the residence are, thus, necessarily paid by the Debtor's spouse on a regular basis toward the Debtor's household expenses, thereby qualifying the costs as 'current monthly income' under § 101(10A)(B). Based on this, the Court can discern no error in the UST's assessment that the Debtor should only be allowed to take a marital deduction of $489.00 for her husband's equity loan, thereby resulting in a downward revision in the Debtor's marital adjustment by $761.00.

Similarly, the Debtor's marital adjustment of $1,300.00 for her husband's credit-card payments is not completely warranted. Specifically, while it is true that some of her husband's credit-card debt was incurred for personal use – for example, medical bills and hobby pursuits – the Debtor was unable to controvert the UST's assertion that the majority of her husband's credit card debt was incurred for household expenses. As a result, the Court finds that the Debtor should only be allowed a marital adjustment of $300.00 for her husband's credit-card obligations.

Accordingly, based upon these revisions, the marital adjustment taken by the Debtor on line 17 of her 'means test' calculation should be revised downward by $1,761.00, thereby changing the deduction from $3,473.00 to $1,712.00. This revision, in turn, changes the Debtor's 'disposable income' figure from a negative of ($888.18) to positive balance of $872.82. A further upward adjustment of $706.00 is also needed in the Debtor's disposable income.

### Second Motor Vehicle Deduction

In her bankruptcy filing, the Debtor disclosed an interest in a single motor vehicle, a 2006 Jeep Liberty Sport. The 'means test' of § 707(b)(2) allows a debtor to claim both the operating and

Page 8

In re: Shannon Q. Sturm
Case No. 10-34829

ownership costs of a vehicle. The authority for this deduction is found in § 707(b)(2)(A)(ii)(I), which provides that the "debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service . . . ."

The Local Standards issued by the Internal Revenue Service specify ownership and operating costs for a single vehicle as well as two vehicles.[2] For her 'means test' calculation on Form B22A, the Debtor claimed ownership and operating expenses for two vehicles, notwithstanding only having an ownership interest in one vehicle. The expenses for the two vehicles on the Debtor's 'means test' totaled $1,331.77.

For the second vehicle, the cost was $706.00. This cost was comprised of two components: (1) an operating expense of $210.00 for the second vehicle, set forth on line 22A; and (2) $496.00, as the ownership cost of a second vehicle, set forth on line 24. It is the position of the UST that, while she is entitled to take the ownership and operating expense for a single vehicle, the Debtor is not entitled to a deduction for a second vehicle. The Court agrees with this position.

The Internal Revenue Standards, incorporated into the 'means test' by § 707(b)(2), do not specify whether just one person is entitled to take a deduction for two vehicles. However, a few considerations show that the better result is to limit that person's deduction to just one vehicle. First, the standards set by the Internal Revenue Service for vehicle deductions offer two alternatives: a deduction for one vehicle and a deduction for two vehicles. To allow a solitary debtor to claim a deduction for two automobiles, however, would effectively make the single vehicle deduction

---

[2] http://www.irs.gov/businesses/small/article/0,,id=104623,00.html

Page 9

In re: Shannon Q. Sturm
Case No. 10-34829

redundant as any debtor, seeking to avoid a finding of abuse under § 707(b), would be better served by claiming a deduction for two vehicles.

Second, while not necessarily binding upon the Court, it is telling that the portion of the Internal Revenue Manual addressing this issue provides that a "single taxpayer is normally allowed ownership and operating costs for one vehicle." Internal Revenue Manual 5.15.1.9 (10-02-2009). Finally, the 'means test' of § 707(b)(2) was enacted to ensure that those who can afford to repay some portion of their unsecured debt be required to do so. *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008), quoting *In re Hardacre*, 338 B.R. 718, 725 (Bankr. N.D.Tex. 2006). It is, thus, counterintuitive that § 707(b)(2) would allow just one debtor to claim the ownership and operating costs for two vehicles. In this regard, it is a "well established principle of statutory interpretation that the law favors rational and sensible construction." *U.S. v. Project on Gov't Oversight*, 484 F.Supp.2d 56, 65 (D.D.C. 2007), quoting *2A Norman J. Singer, Sutherland Statutory Construction* § 45:12 (6th ed. 2002).

Accordingly, the Court is unwilling to read § 707(b)(2) in the manner advocated by the Debtor. In coming to this holding, it is recognized that some decisions have held that a debtor with an ownership interest in two vehicles is entitled to take a deduction for the second vehicle.[3] However, even if this Court were inclined to adopt such an approach, it would not apply here as the

---

[3] *In re Cole*, 427 B.R. 467 (Bankr. C.D.Ill. 2010) (a single Chapter 7 debtor with no dependents was entitled to take an ownership and operation expense deductions for each of the two motor vehicles she owned); *In re Comstock*, 389 B.R. 888 (Bankr.N.D.Cal.2008) (a single Chapter 7 debtor with no dependents could take a deduction for both vehicles she owned where it was shown that it was a reasonable necessity); *In re Zaporski*, 366 B.R. 758 (Bankr.E.D.Mich. 2007) (a debtor could take an operation expense deduction for each of the two motor vehicles that he owned, despite debtor being divorced and having no dependents); *In re Barrett*, 371 B.R. 860 (Bankr. S.D.Ill. 2007) (a debtor with two vehicles in a single-person household is not limited to claiming an ownership expense deduction for one vehicle, but may claim a deduction for two vehicles).

Page 10

In re: Shannon Q. Sturm
Case No. 10-34829

Debtor only has an ownership in a single vehicle. Accordingly, for these reasons, the Debtor is not entitled to deduct on her 'means test' the costs associated with a second vehicle.

Based, therefore, on the changes discussed herein, the Debtor's 'disposable income' for purposes of the 'means test' must be revised upward by $2,467.00 – with this figure being the sum of $1,712.00, the amount of the improper marriage adjustment made by the Debtor, and $706.00, the improper deduction taken by the Debtor for a second vehicle. When this revision is made, the Debtor's 'disposable income' goes from a negative of ($888.18) to a positive balance of $1,578.82, an amount well above the abuse thresholds set by § 707(b)(2).

To be fair, the UST did point out that the Debtor did not take some deductions that were available to her for purposes of the 'means test.' These deductions, involving insurance and administrative expenses, total just under $400.00. However, even accepting as true that the Debtor is entitled to utilize these deductions, making such an adjustment does not even come close to lowering the Debtor's disposable income below the abuse thresholds of § 707(b)(2). Accordingly, whether the Debtor is entitled to such deductions is not being passed upon in this Decision.

For all these reasons, the 'means test' calculation of § 707(b)(2) gives rise to a presumption of abuse. As such, with the presumption not having been rebutted, the Court is required to find that the Debtor is not entitled to relief under Chapter 7 of the United States Bankruptcy Code. In reaching these conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 11

In re: Shannon Q. Sturm
Case No. 10-34829

Accordingly, it is

**ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(2), be, and is hereby, GRANTED.

**IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, January 24, 2011, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: January 7, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 7th day of January, 2011 to:

Shannon Q Sturm
4405 283rd St.
Toledo, OH 43611

Gary E Horn
4325 Willys Pkwy
Toledo, OH 43612

Douglas A Dymarkowski
5431 Main Street
Sylvania, OH 43560

Derrick Rippy ust11
201 Superior Ave, #441
Cleveland, OH 44114

                                            /s/Diana Hernandez
                                      Deputy Clerk, U.S. Bankruptcy Court