# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                              )
                                                    )       **JUDGE RICHARD L. SPEER**
Shannon Q. Sturm                                    )
                                                    )       Case No. 10-34829
      Debtor(s)            )
                                                    )

## DECISION AND ORDER

On January 7, 2011, this Court entered a Decision and Order, granting the Motion filed by the United States Trustee to Dismiss this case under 11 U.S.C. § 707(b)(2).[1] (Doc. No. 20). The Debtor filed an appeal of this Order. (Doc. No. 21). The appeal was assigned to the Honorable Jack Zouhary, United States District Court, Northern District of Ohio, Western Division, Case No. 3:11-cv-00199, captioned *Sturm v. United States Trustee.*

On July 14, 2011, Judge Zouhary entered a Memorandum Opinion and Order in which he remanded to this Court certain matters for determination, including whether the Debtor was entitled to make a marital adjustment against her 'current monthly income' of $1,300.00 per month. Regarding this adjustment, Judge Zouhary set forth in his Memorandum Opinion and Order that "the record evidence (consisting of Mr. Sturm's vague, unsubstantiated, and seeming extemporaneous recital of his credit card debts, and Lowman's conclusion based entirely on a theory of how Mr. Sturm's credit cards were used) does not allow this Court to determine the proper adjustment." (Doc. No. 47, at pg. 16). Based upon this, Judge Zouhary stated: "On remand, [the Debtor] is direct to

---

[1] The United States Trustee also predicated its Motion to Dismiss on § 707(b)(3), which provides for the dismissal of a debtor's case when the totality of the debtor's financial circumstances demonstrate abuse. The Court has yet to rule on this portion of the United States Trustee's Motion.

In re: Shannon Q. Sturm
Case No. 10-34829

supply the bankruptcy court with detailed written information regarding the sources of Mr. Sturm's credit card obligations, such as Mr. Sturm's credit card statements." *Id.* at pg. 17.

Consistent with Judge Zouhary's directives, this Court entered an Order on July 29, 2011, providing, *inter alia*:

> the Debtor file with the Court detailed information regarding the source of Mr. Sturm's credit card obligations. Such information shall include past credit-card statements, and explanations regarding the statements so as to enable the Court to make a determination regarding the nature of such obligations for purposes of 11 U.S.C. § 101(10A)(B).

(Doc. No. 45, at pg. 2). On September 9, 2011, the Debtor submitted to the Court credit-card statements belonging to her husband, together with a short explanation of the statements. (Doc. No. 53). Thereafter, the UST filed a response to this evidentiary material, arguing that it should be discounted because the "credit card statements filed appear to be selective and self-serving." (Doc. No. 55, at pg. 4).

The Court, after having reviewed the evidentiary materials submitted by the Debtor, agrees with the UST, and finds the credit-card statements and the cursory explanations thereof, to be deficient for the purpose of making a finding regarding the 'marital adjustment' under 11 U.S.C. § 101(10A)(B).

## DISCUSSION

Under § 707(b), a debtor's bankruptcy case may be dismissed if it is found that the granting of relief would be an abuse of the provisions of Chapter 7 of the Bankruptcy Code. Pursuant to § 707(b)(2), a presumption of abuse may arise, based upon a 'means test' formulation, if a debtor's disposable income exceeds certain statutory thresholds. A debtor's disposable income is determined

Page 2

In re: Shannon Q. Sturm
Case No. 10-34829

by first ascertaining the debtor's 'current monthly income' and then reducing that sum by amounts set by statute.

When determining 'current monthly income,' a debtor may exclude income received by a nondebtor spouse when that income is not contributed "on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent) . . . ." 11 U.S.C. § 101(10A)(B). This is commonly referred to as the 'marital adjustment.'

In this matter, it is the Debtor's contention that absolutely none of the charges her husband incurred on his credit cards during their marriage were regularly used for household expenses. Instead, based upon testimony provided by Mr. Sturm, it is the Debtor's position that her husband's outstanding credit-card debt represents obligations incurred for purely personal matters, including attorneys' fees, doctors, car repair and operation, the purchase of memorabilia on the internet, and expenses associated with two nonresidential properties titled solely in her husband's name.

As support for her position, the Debtor submitted to the Court credit-card statements from three accounts maintained by her husband: Bank of America, New York Life, and the Toledo Police Federal Credit Union. These statements cover the following periods:

Bank of America

    August 2007 to April 2009, but missing statements from October through December of 2008.

New York Life

    May 2008 to May 2010.

Toledo Police Federal Credit Union

Page 3

In re: Shannon Q. Sturm
Case No. 10-34829

       November 2009 to April 2010, but missing the February 2010 statement.

From an evidentiary standpoint, however, these statements do not sufficiently corroborate the Debtor's position that none of her husband's credit-card debt was incurred for the regular benefit of the Debtor's household.

       First, the scope of the credit-card statements is temporally incomplete. The Debtor and her husband were married in April 2006. The Debtor filed for bankruptcy on July 15, 2010. As set forth above, however, the credit-card statements provided by the Debtor do not come close to covering this time period. To the contrary, the Debtor fully acknowledges that the "credit card statements admittedly represent only a limited period of time. . . ." (Doc. No. 53).

       Moreover, the Debtor does not provide a sufficient explanation for the incompleteness of the credit-card statements. In her statement to the Court, the Debtor only set forth that "these are the statements the creditors provided to date upon Mr. Sturm's request." However, the Debtor did not show that any further efforts were made to obtain the required information. For example, there is nothing on the record to show that the Debtor attempted to subpoena the records from her husband's credit-card accounts. *See* FED.R.BANKR.P. 9016.

       It is also troubling that gaps exist in some of the records provided. Particularly, concerning the periods of time covered by the credit-card statements filed with the Court, four statements are missing. This, along with the Debtor's failure to make further efforts to obtain the required information, necessarily raises negative inferences. *See Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 522 fn.1 (6th Cir. 2008) (general rule is that where relevant information "is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it).

Page 4

In re: Shannon Q. Sturm
Case No. 10-34829

Finally, it cannot be ignored that some of the entries in the credit-card statements provided to the Court belie the Debtor's contention that her husband's credit-card debt should be entirely excluded from the scope of the Debtor's 'current monthly income' for purposes of § 101(10A)(B). That is, certain expenditures contained in the credit-card statements lend themselves to the conclusion that such debts were incurred on a regular basis for the household expenses of the Debtor. By way of example, the statements provided to the Court show multiples charges to retailers such as Walmart, Bed Bath & Beyond, Big Lots, Target, Meijer and BestBuy. The explanation of the Debtor's husband, – that he "cannot remember what the purchases were" – is entirely self serving, and thus cannot be viewed as corroborating the Debtor's position that such expenses were not incurred for the Debtor's household.

As set forth above, Judge Zouhary directed this Court to base the marital adjustment made by the Debtor for her husband's credit-card obligations on solid evidence, and not on "Mr. Sturm's vague, unsubstantiated and seemingly extemporaneous recital of his credit card debts." For the reasons set forth herein, the Court does not have such evidence. However, pursuant to 11 U.S.C. § 105(a), and so as to afford the Debtor a full and fair opportunity to provide the necessary information, the Court will allow the Debtor a further opportunity to provide a complete accounting of her husband's credit-card debt.

Page 5

**In re: Shannon Q. Sturm**
**Case No. 10-34829**

Accordingly, it is

**ORDERED** that by Monday, January 2, 2012, the Debtor file with the Court a complete accounting, including all discoverable statements of her husband's credit-card obligations. This accounting shall cover the period commencing from the date of the Debtor's marriage up until the time the Debtor sought relief in this Court. The United States Trustee is thereafter afforded 14 days to file a response to the accounting provided by the Debtor.

Dated: November 2, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 6

# CERTIFICATE OF SERVICE

Copies were mailed this 2nd day of November, 2011 to:

Shannon Q Sturm
4405 283rd St.
Toledo, OH 43611

Gary E Horn
4325 Willys Pkwy
Toledo, OH 43612

Douglas A Dymarkowski
5431 Main Street
Sylvania, OH 43560

Amy Good
201 Superior Ave, #441
Cleveland, OH 44114

Derrick Rippy
201 Superior Ave, #441
Cleveland, OH 44114

Chase Auto Finance
201 N. Central Ave, 11th Fl
Phoenix, AZ 85004

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court