# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In Re: | ) | **JUDGE RICHARD L. SPEER** |
| | ) | |
| Shannon Q. Sturm | ) | |
| | ) | Case No. 10-34829 |
| Debtor(s) | ) | |
| | ) | |

### DECISION AND ORDER

This cause comes before the Court on Remand from the District Court in the case Captioned: *Shannon Sturm v. United States Trustee*, Case No. 11-CV-199, Judge Zack Zouhary. On remand, the District Court set forth that this Court shall reconsider two matters pertaining to this Court's prior decision in which, on a Motion brought by the United States Trustee, it was determined that, under the 'means test' calculation of § 707(b)(2), a presumption of abuse arose. (Doc. No. 20). Consistent with this directive, the Court thereafter afforded the Parties the opportunity to submit arguments and evidence in support of their respective positions on the matters remanded to the Court. (Doc. No. 45). The Parties have since filed their arguments and evidentiary materials which this Court has now had the opportunity to review. Based upon this review, and for the reasons set forth herein, the Court finds that the Motion of the United States to Dismiss under § 707(b)(2) should be Granted.

### BACKGROUND

On July 15, 2010, the Debtor, Shannon Q. Sturm, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). At the time she filed her petition for bankruptcy relief, the Debtor was married, and had no dependents. The Debtor's husband did not join with Mrs. Sturm in seeking bankruptcy relief.

At the time she filed her petition, the Debtor, as required by the Bankruptcy Rules, submitted an Official Form B22A, entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." This form implements the requirement of § 707(b)(2)(C), requiring a debtor to perform the 'means test' calculation of § 707(b)(2) so as to determine if granting relief in the case should be presumed to be an abuse.

In completing Form B22A, the Debtor represented that she was an Ohio resident and had a gross monthly income of $3,861.93; the Debtor also reported that her non-debtor husband had a gross monthly income of $3,473.00. Based upon these figures, the Debtor reported a combined gross annual income of $88,019.16, an amount which exceeded the state median income for a like-size household.

Only debtors with household income above the state median income are subject to having their case dismissed based upon a presumption of abuse arising under § 707(b)(2). 11 U.S.C. § 707(b)(7). Moreover, a case will only be found to be presumptively abusive if the debtor's disposable income, as calculated over a five-year period, satisfies one of these two conditions: (1) the debtor's disposable income is greater than $11,725.00; or (2) although less than $11,725.00, the debtor's disposable income is greater than or equal to $7,025.00 or 25 percent of the debtor's nonpriority unsecured debts, whichever is greater.[1] On a per month basis, the abuse threshold of $11,725.00, represents $195.42, while the abuse threshold of $7,025.00 represents $117.08.

In applying the 'means test,' a debtor's disposable income is calculated by subtracting those expenses allowed by clauses (ii), (iii), and (iv) of § 707(b)(2)(A) from the debtor's current monthly income. The term current monthly income is defined in § 101(10A), and generally means "the

---

[1]

Pursuant to 11 U.S.C. § 104, these amounts are adjusted every three years to reflect changes in the Consumer Price Index.

Page 2

average monthly income from all sources that the debtor receives" during the six-month period preceding the commencement of the case. A debtor whose 'current monthly income' falls above the state-median income is required to itemize their expenses by completing form B22A. Because the combined gross income of her and her husband exceeded the state median income, the Debtor completed Form B22A.

In completing Form B22A, the Debtor reported that no presumption of abuse arose in her case for purposes of § 707(b)(2). The Debtor based this conclusion on the 'means test' formula yielding a deficit in her current monthly income of $888.18 per month. In arriving at this figure, the Debtor took a number of deductions, including: (1) a monthly of expense of $210.00 for the operation of a second motor vehicle; (2) a $496.00 monthly expense, representing the ownership/lease expense of a second vehicle; and (3) a $761.00 mortgage/rent expense. As the basis for these deductions, the Debtor relied on clause (ii) of § 707(b)(2)(A) which, among other expenses allows a debtor to deduct from their 'current monthly income' the "debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service for the area in which the resides . . . ."

The Debtor also deducted from her income the sum of $3,473.00, representing the entire monthly income of her husband. For this deduction, the Debtor relied on § 101(10A)(B) which addresses the type of situation encountered by the Debtor where only one spouse seeks bankruptcy relief. In so doing, the definition of 'current monthly income,' as used in the 'means test' calculation of § 707(b)(2), is limited to only the "amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ." In other words, income that a non-debtor spouse utilizes for their own personal obligations, and thus is not contributed to the debtor's household, is not included in a debtor's 'current monthly income.' On Form B22A, this exclusion from a debtor's 'current monthly income' is referred to as the 'marital adjustment.'

Page 3

On September 27, 2010, the United States Trustee (hereinafter the "UST") filed a Motion to Dismiss the Debtor's case. (Doc. No. 12). In its Motion, the UST disputed the Debtor's determination that no presumption of abuse arose in her case for purposes of 707(b)(2).[2] The UST reached this conclusion after conducting its own 'means test' calculation which showed that the Debtor had a monthly disposable income of $1,455.28, well above the abuse thresholds, *supra*, set forth in § 707(b)(2). (Doc. No. 19, Ex. F-8).

An evidentiary hearing was then held on the Motion of the UST to Dismiss. At the conclusion of the Hearing, the Court deferred ruling on the matters raised by the Parties so as to afford the opportunity to further consider the positions taken by the Parties. (Doc. No. 18). On January 7, 2011, the Court entered its decision on the matter, holding that, for purposes of the 'means test' of § 707(b)(2), a presumption of abuse arose in the Debtor's case. (Doc. No. 20). The Debtor then filed an appeal of this Court's determination. (Doc. No. 21).

## POSITION OF THE PARTIES

In seeking to have the Debtor's case dismissed for abuse under the 'means test' formulation of § 707(b)(2), the UST challenged a number of downward adjustments made by the Debtor to her 'current monthly income.' First, the UST objected to the Debtor's allocation of expenses for the ownership and operation of a second motor vehicle, taking the position that the Debtor should only be allowed to deduct from her income the expenses associated with a single vehicle. The UST also challenged two of the itemized expenses claimed by the Debtor as a marital adjustment: (1) a

---

[2]

The United States Trustee also predicated its Motion to Dismiss on § 707(b)(3), which provides for the dismissal of a debtor's case when the totality of the debtor's financial circumstances demonstrate abuse. The Court has yet to rule on this portion of the United States Trustee's Motion.

Page 4

$1,300.00 per month expense, representing payments on her husband's credit cards; and (2) a $1,250.00 per month deduction for housing, representing the mortgage payment encumbering the property in which the Debtor resides, but for which only the Debtor's husband has any personal liability.

As it concerns the adjustment made by the Debtor for her husband's credit-card obligations, the UST took the position that payments on these obligations could not be taken as a 'marital adjustment' for purposes of § 101(10A)(B) because the obligations were incurred primarily for the regular household expenses of both the Debtor and her husband. Concerning the housing deduction, it was the position of the UST that the deduction should be limited to $489.00 per month, representing the difference between these two figures: (1) the $761.00 mortgage/rent expense claimed by the Debtor and the $1,250.00 mortgage payment of the Debtor's husband which the Debtor also deducted from her 'current monthly income' as a marital adjustment under § 101(10A)(B). According to the UST, to allow both deductions in full would amount to "double dipping." (Doc. No. 12).

In addition to challenging the above deductions taken by the Debtor, the UST also made allowance for certain deductions not utilized by the Debtor: (1) health and disability insurance totaling $315.66 per month; and (2) a potential Chapter 13 administrative expense of $107.86 per month. (Doc. No. 19, Ex. F). Once all these adjustments were made, the UST put forth that, for purposes of the 'means test' of § 707(b)(2), the Debtor had $1,455.28 in disposable income.

## DECISION OF THIS COURT

On January 7, 2011, this Court entered an Order and Decision, addressing the matters raised by the UST. (Doc. No. 20). In this Decision, the Court first addressed the UST's objection to the 'marital adjustments' made by the Debtor. In doing so, the Court initially observed that the overall

Page 5

'marital adjustment' made by the Debtor had an obvious flaw given that the "amount of the adjustment corresponds exactly to the gross income of the Debtor's husband." *Id.* at pg. 7. In other words, the Debtor was claiming that, despite living with her husband, the 'means test' formulation of § 707(b)(2) countenanced that all of the household expenses of the Debtor should be borne by her income alone. The Court found this to be a *non sequitur* given that the Debtor's husband, who earned an appreciable level of income, had both a legal and moral duty to help support his wife.[3] *Id.*

The Court then turned to address the specific objections raised by the UST to the 'marital adjustments' made by the Debtor. First, concerning the $1,250.00 monthly mortgage payment, this Court adopted the argument of the UST, stating:

> the Debtor did not produce any evidence even tending to show that her husband's monthly $1,250.00 payment on an equity loan did not go largely toward the Debtor's household expenses. To the contrary, the evidence in this case shows that the Debtor's spouse is the sole owner of the marital residence. The costs associated with the residence are, thus, necessarily paid by the Debtor's spouse on a regular basis toward the Debtor's household expenses, thereby qualifying the costs as 'current monthly income' under § 101(10A)(B). Based on this, the Court can discern no error in the UST's assessment that the Debtor should only be allowed to take a marital deduction of $489.00 for her husband's equity loan, thereby resulting in a downward revision in the Debtor's marital adjustment by $761.00.

*Id.* at pg. 8.

Regarding the Debtor's monthly deduction of $1,300.00 for her husband's credit-card debt, this Court found the position of the UST, that the expense should be entirely disallowed, partially persuasive, setting forth:

---

[3]

Citing O.R.C. § 3103.03(A) which holds that "[e]ach married person must support the person's self and spouse out of the person's property or by the person's labor."

the Debtor's marital adjustment of $1,300.00 for her husband's credit-card payments is not completely warranted. Specifically, while it is true that some of her husband's credit-card debt was incurred for personal use – for example, medical bills and hobby pursuits – the Debtor was unable to controvert the UST's assertion that the majority of her husband's credit card debt was incurred for household expenses. As a result, the Court finds that the Debtor should only be allowed a marital adjustment of $300.00 for her husband's credit-card obligations.

*Id.*

Finally, in finding that a presumption of abuse arose in the Debtor's case for purposes of § 707(b)(2), the Court disallowed the Debtor a deduction for the ownership and operating expenses of a second motor vehicle. This deduction totaled $706.00 per month, representing a monthly operating expense of $210.00 and a monthly ownership cost of $496.00. On appeal, the Debtor did not challenge this finding. (Doc. 47, at pg. 4). Instead, as it regards this Court's conclusions when applied to the 'means test' of § 707(b)(2), three issues were presented to the District Court for consideration.

First, whether the Debtor could claim, as a deduction against her 'current monthly income,' these two monthly expenses together: (1) a $761.00 mortgage/rent expense as provided for under the Local Standards specified in § 707(b)(2)(A)(ii); and (2) a 'marital adjustment' of $1,250.00 for her husband's mortgage payment. (Doc. No. 47, at pg. 6). Second, whether the Debtor may deduct, as a 'marital adjustment,' the entire amount of her husband's credit-card payments, totaling $1,300.00 per month. *Id.* Finally, if the entire amount of the credit-card obligations may not be allocated as a 'marital adjustment,' whether sufficient evidence exists to support this Court determination that the Debtor was entitled to only a $300.00 adjustment for her husband's credit-card debt. *Id.*

Page 7

## DECISION OF THE DISTRICT COURT

For the matters presented on appeal, the District Court began by addressing those deductions utilized by the Debtor for her housing. These deductions, totaling $2,011.00 per month, represented the $761.00 mortgage/rent expense as provided for under the Local Standards, and the $1,250.00 'marital adjustment' as derived from her husband's mortgage payment. The District Court addressed each of these deductions separately.

First, for the latter deduction, the District Court held that the Debtor "is entitled to a Marital Adjustment for the entirety of her husband's mortgage payment." (Doc. No. 47, at pg. 8). Second, concerning the $761.00 monthly deduction the Debtor utilized as a housing deduction under the Local Standards prescribed by the 'means test,' the District Court held that this Court "is directed to reconsider [the Debtor's] entitlement to a Local Standards Housing deduction in light of *Ransom*." *Id.* at 14. For this purpose, *Ransom* refers to the United States Supreme Court's ruling in *Ransom v. FIA Card Servs., N.A.*, – U.S.– , 131 S.Ct. 716, 178 L.Ed.2d 603 (2011), decided just days after this Court rendered its decision in this case. In *Ransom*, the Supreme Court held that a debtor who is not required to make a loan or lease payment on an automobile is not entitled to utilize the car-ownership deduction prescribed in the Local Standards of the 'means test' when calculating his or her 'disposable income.'

The District Court next addressed the second and third issues the Debtor presented on appeal: Whether the Debtor's use of a 'marital adjustment' for her husband's credit-card payments, totaling $1,300.00 per month, was proper. In finding that a presumption of abuse arose under § 707(b)(2), this Court, not having the benefit of any documentary evidence, determined on the limited evidence available that the Debtor's proper 'marital adjustment' for her husband's credit-card debts should be set at $300.00 per month. The District Court reversed, finding that a determination of the Debtor's 'marital adjustment' for her husband's credit-card payment should be determined "with detailed

Page 8

written information regarding the sources of Mr. Sturm's credit-card obligations, such as Mr. Sturm's credit card statements." (Doc. No. 47, at pg. 17).

Consistent with the determinations made by the District Court, this Court afforded the Parties the opportunity to file written arguments in support of their respective positions concerning the impact of the Supreme Court's decision in *Ransom*. The Court also ordered the Debtor to produce detailed information regarding her husband's credit-card obligations, including the production of past credit-card statements. The Debtor has since produced this information. As well, the Parties have each filed their arguments concerning the implications of the *Ransom* decision on the monthly deduction of $761.00 utilized by the Debtor under the Local Standards prescribed by the 'means test.' (Doc. No. 45).

## DISCUSSION

In her Form B22A, as filed with the Court, the Debtor claimed that, under the means-test formulation of § 707(b)(2), she had a deficit in her currency monthly income of ($888.18). After remand, the UST submitted its own revised means-test calculation, setting forth that, according to its calculation, the Debtor had a monthly disposable income of $597.27. (Doc. No. 81, Ex. C). In arriving at this figure, the UST made two adjustments for which the Debtor did not take issue.

First, the UST did not include a deduction of $706.00 for a second automobile,[4] a position which the Debtor subsequently acknowledged on appeal to be correct. (Doc. No. 47, at pg. 4). The

---

[4]

Under the Local Standards prescribed by the means test of § 707(b)(2), a debtor may, in some instances, take a deduction for a second automobile. This deduction includes two components: (1) operating costs; and (2) ownership costs. At the time the Debtor sought bankruptcy relief, the allowable amount of these respective costs was $210.00 and $496.00.

Page 9

UST also allowed the Debtor a deduction of $315.68 for health and disability insurance, a position which, as it inured to her benefit, the Debtor did not contest. Once allowance is made for these adjustments, a comparison between the Parties' respective means-test calculations shows that the following two deductions constitute the only remaining points of discrepancy:

Line 17-Marital Adjustment.

| Debtor | UST |
|--------|-----|
| $3,473.00 | $3,138.87 |

Line 20B-Local Standard: housing and utilities; mortgage/rent expense.

| Debtor | UST |
|--------|-----|
| $761.00 | $0.00 |

For these points of discrepancy, the District Court directed that the "bankruptcy court shall reconsider Sturm's claim to a Local Standards Housing deduction in light of Ransom and the extent to which Sturm may claim a marital adjustment for Mr. Sturm's credit card payments." (Doc. No. 47, at pg. 4). Pursuant to this directive, this Court will first address the latter issue concerning the Debtor's 'marital adjustment' for her husband's creditor-card payments.

## Marital Adjustment

In performing the 'means test' calculation of § 707(b)(2), a debtor must include in their 'current monthly income' "any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), . . . ." 11 U.S.C. § 101(10A)(B). The effect of this definition is to capture in a debtor's current monthly

income, any money paid to the debtor by a third party. Typically, such income will come from the non-filing spouse of the debtor.

Section 101(10A)(B), however, generally limits the scope of such income to only those amounts actually paid on a regular basis for the household expenses of the debtor or the debtor's dependents. In other words, a debtor is only required to include in their 'current monthly income,' money paid from a third party, such as a spouse, when the debtor receives a direct and reoccurring benefit from the payment. Based upon this limitation, Form B22A requires a debtor, when calculating their 'current monthly income,' to claim on line 2 the entirety of a non-filing spouse's income, but then allows a debtor to deduct on line 17 those amounts not regularly paid by the non-filing spouse toward the household expenses of the debtor. The allowance on line 17 is referred to as the "marital adjustment."

The amount of a 'marital adjustment' claimed by a debtor will have the effect of decreasing his or her current month income, thereby making it less likely that a presumption of abuse will arise under § 707(b)(2). As a result, a debtor who does not wish to repay their legal obligations has an incentive to maximize the amount of the 'marital adjustment.' Because of this, line 17 on form B22A requires a debtor to itemize each of those adjustments claimed by the debtor.

For those itemized expenses claimed by the Debtor as a 'marital adjustment,' the UST made the following changes:

Credit Card

| Debtor | UST |
|---|---|
| $1,300.00 | $975.00 |

Page 11

Car Repair + Gas

| Debtor | UST |
|---|---|
| $150.00 + 140.00 | $82.00 |

The UST also allowed the Debtor an expense, labeled "ins umb.," for $199.00.

Based upon these changes, the UST claims that, after rounding to the nearest dollar, the Debtor's 'marital adjustment' should be lowered by the amount of $334.00 – *i.e.*, from $3,473.00 to $3,138.87. Of this amount, the sum of $325.00 represents the amount of the disagreement between the Parties concerning the 'marital adjustment' made by the Debtor for her husband's credit-card payments. To evaluate the propriety of this adjustment, this Court previously entered an order providing that the Debtor provide the Court with a "complete accounting, including all discoverable statements of her husband's credit-card obligations." (Doc. No. 56, at pg. 6). Acting on this Order, the Debtor eventually filed with the Court 28 separate exhibits, totaling 216 pages, of credit-card statements. According to Debtor, these statements show that for her husband, "the overwhelming majority of purchases are clearly for his personal use and not toward any household expense." (Doc. 76, Main Doc. at pg. 2).

In reviewing the credit-card statements, this Court, as it did in its previous decision, finds it credible that the Debtor's husband made a vast number of credit-card charges for purchases that were for his own personal use, and not for the Debtor's household expense. To give a couple of examples, the Court has no difficulty ascribing as a non-household expense, charges made by the Debtor's husband to "paypal" for collectibles and comic books purchased via the internet. Similarly, the credit-card statements submitted by the Debtor's husband show credit-card charges incurred for charitable contributions, an expenditure which is often personal in nature.

Page 12

To be sure, as pointed out by the UST, a number of the charges incurred by the Debtor's husband could be construed as being for the Debtor's household. In particular, the UST, after conducting its own analysis of the credit-card transactions, correctly pointed out that approximately 25% of the purchases transacted by the Debtor's husband were made at vendors which supply goods – *e.g.*, groceries – typically used in a household. (Doc. No. 81). For example, the credit-card statements provided by the Debtor's husband show recurring charges made at Best Buy, Big Lots, Meijer, Target, Wal Mart and Kroger.

However, the theory posited by the UST – that a certain percentage of the Debtor's husband's credit-card transactions should be allocated to the Debtor's household based upon the nature of the transactions – was rejected by the District Court. In its Decision, the District Court made it clear: "the Trustee bears the burden of establishing that Mr. Sturm's credit card debts were incurred for Sturm's household expenses – a burden that may not be met using only a theory of credit card usage unsupported by evidence." (Doc. at 84, pg. 16-17).

Moreover, the Debtor's husband, in an affidavit submitted to the Court, provided explanations regarding those charges which could be construed as being for the Debtor's household, but for which it was claimed were utilized for the personal use of the Debtor's husband. By way of example, the Debtor's husband made these statements in his affidavit:

> I would normally purchase VCR tapes and DVD sets from Target, Walmart, and Barnes & Noble.
>
> I would purchase clothes for myself at JC Penney and Walmart.
>
> I normally would purchase automotive supplies from Meijers . . .
>
> I used the credit cards as various gas stations for my vehicles, *e.g.* Kroger. .

Page 13

(Doc. No. 76, att. no. 2).

Even with the above statements, however, the Debtor's position, that not one iota of her husband's credit-card purchases inured to her benefit, does begin to strain credulity. To begin with, the credit-card statements provided by the Debtor's husband show hundreds of charges, totaling $67,768.39. (Doc. No. 81, Ex. B). The scope of these charges, both in number and in amount, make it difficult to believe that the Debtor's household did not, on a regular basis, benefit from a certain percentage of such charges. In addition, to substantiate his claim that practicably all his credit-card transactions were for his personal use, the Debtor's husband, a former police officer, made this statement in his affidavit: "I would purchase soaps and personal toiletries from Bed, Bath and Beyond." (Doc. No. 76, att. no. 2).

In the end, however, the theory posited by the UST is not supported by any corroborating evidence. As such, the Court must reject the position of the UST that the Debtor's 'marital adjustment' for her husband's credit-card payments should be adjusted downward by $325.00 to $975.00. Nevertheless, a slight downward adjustment is still needed in the Debtor's claim of a 'marital adjustment' of $1,300.00 per month for her husband's credit-card payments.

As pointed out by the UST, the $1,300.00 per month credit-card deduction claimed by the Debtor as a "marital adjustment" includes expenses incurred by the Debtor's husband for the operation of his personal vehicle. The Debtor's husband, in fact, acknowledged this in his affidavit, see statements *supra*, wherein he claimed that he used his credit cards to purchase fuel and auto supplies. At the same, the Debtor claimed as a separate "marital adjustment" the sum of $290.00 per month for the operation of his motor vehicle, representing $150.00 for car repairs and $140.00 for fuel.

Page 14

Based upon these circumstances, only one conclusion can be drawn: The Debtor has, to some extent, impermissibly duplicated the 'marital adjustment' regarding the operational expenses associated with her husband's motor vehicle. In an analysis performed by the UST, 16% of the Debtor's 'marital adjustment' of $1,300.00 per month, equating to $208.00, represents payment for the regular and continuous vehicle expenses charged by the Debtor's husband to his credit cards. The Debtor did not contest this analysis. Accordingly, the Court finds that, consistent with the position of the UST, the Debtor's 'marital adjustment' of $290.00 per month, representing the operational costs of her husband's motor vehicle, should be reduced by 208.00, to 82.00 per month. In aggregate, therefore, the Debtor's claimed 'marital adjustment' of $1,300.00 per month must be reduced to $1,092.00 per month. For the reasons now explained, however, the Parties' dispute regarding the proper amount of the Debtor's 'marital adjustment' ultimately becomes a moot point in light of the Supreme Court's decision in light of *Ransom v. FIA Card Servs., N.A.*, – U.S.– , 131 S.Ct. 716, 178 L.Ed.2d 603 (2011).

**Local Standards Housing deduction in light of the Supreme Court's decision in Ransom**

In calculating whether, under the 'means test' of § 707(b)(2), granting relief to a debtor under Chapter 7 of the Bankruptcy Code should be presumed to be abusive, a debtor is directed to deduct from their 'current monthly income' a number of different categories of expenses.[5] Among the permissible deductions, are those categories of expenses set forth in § 707(b)(2)(A)(ii)(I) which provides, *inter alia*:

---

[5]

The deductions allowed by § 707(b)(2) may be grouped into six categories: (1) the applicable amounts specified in the National and Local Standards; (2) the actual amount of expenses for the categories specified as "Other Necessary Expenses;" (3) the additional expense deductions enumerated in § 707(b)(2)(A)(I) – (V); (4) monthly payments on secured debts; (5) payments of priority claims; and (6) additional actual expenses for which the debtor can establish "special circumstances"

Page 15

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

Section 707(b)(2)(A)(ii)(I), thus, permits a debtor to deduct from their "current monthly income" these three categories of expenses issued by the Internal Revenue Service: (1) amounts specified under the National Standards; (2) amounts specified under the Local Standards; and (3) expenditures specified as Other Necessary Expenses. For the first two categories, § 707(b)(2)(A)(ii)(I) specifies that such expenses "shall be the debtor's *applicable* monthly expense amounts . . ." (emphasis added). For the last category, § 707(b)(2)(A)(ii)(I) provides that such expenses shall be "the debtor's *actual* monthly expenses . . ." (emphasis added).

Under the Local Standards, deductions are authorized for two types of expenses: housing and transportation. A debtor's housing deduction is further subdivided into two separate components: a non-mortgage component and a mortgage/rent component. The non-mortgage component of the housing deduction is intended to account for a variety of expenses involved in maintaining a residence, such as utilities, repairs and maintenance. The mortgage/rent component applies to account for the cost of acquiring a residence.[6] Each of these components is graduated to account for the size of the debtor's household.

---

[6] Advisory Committee Notes to Official Forms 22A, 22B, & 22C. Available at: http://www.uscourts.gov/FormsAndFees/Forms/BankruptcyForms.aspx.

At the time she filed her petition for bankruptcy relief, the applicable housing deduction for a debtor, having two persons in their household and residing in Lucas County, Ohio, was $458.00 for the non-mortgage component of the deduction and $761.00 for the mortgage/rent component of the deduction.[7] The Debtor, in performing her 'means test' calculation, utilized both of these deductions. (Doc. No. 1). For these two deductions, the UST contested only the latter – the Debtor's deduction of $761.00 for the mortgage/rent component of the housing allowance as provided in the Local Standards set forth in § 707(b)(2)(A)(ii)(I).

The position advance by the UST is predicated on the Supreme Court's decision in *Ransom v. FIA Card Servs., N.A.*, – U.S.–, 131 S.Ct. 716, 178 L.Ed.2d 603 (2011). In *Ransom*, the question presented to the Court was whether, under the means test of § 707(b)(2), "a debtor who does not make loan or lease payments on his car may claim the deduction for vehicle-ownership costs."[8] *Id.* at 723. As with the housing allowance, under the Local Standards there exists two components with respect to a debtor's allowance for a deduction for transportation costs associated with a motor vehicle: (1) an operating cost; and (2) an ownership cost. In *Ransom*, the debtor, although claiming an ownership cost for his vehicle, did not actually make a loan or lease payment toward his vehicle. *Id.*

---

[7]

http://www.justice.gov/ust/eo/bapcpa/20100315/bci_data/housing_charts/irs_housing_charts_OH.htm.

[8]

The case in *Ransom* involved the amount a debtor was required to repay under a Chapter 13 plan of reorganization. This facet of the *Ransom* case, being a Chapter 13 case, as opposed to a Chapter 7 case, in no way diminishes its precedential value. The Supreme Court in *Ransom* was specifically addressing the provision at issue in this case, 11 U.S.C. § 707(b)(2)(A)(ii)(I). In this regard, debtors who have income above the state-median income are required in a Chapter 13 case to ascertain their 'disposable income' – the amount to be paid into a plan of reorganization – by reference to the 'means test' of § 707(b)(2).

Page 17

On the question before it, the Court decided against the debtor, holding that the deduction allowed under the 'means test' for the ownership costs of a motor vehicle is applicable to only loan and lease payments and that because the debtor owned his vehicle free from any debt or obligation, he was not entitled to claim the allowance. *Id.* at 730. In short, the Court stated, a debtor "may not deduct loan or lease expenses when he does not have any." *Id.* According to the UST, this holding is equally applicable to this case, and should preclude the Debtor from claiming a deduction of $761.00 for the mortgage/rent component of the housing allowance provided for under the Local Standard, because the Debtor is not under any legal obligation to make such a payment, with her husband being the sole party liable on the mortgage encumbering the marital residence.

It is beyond reproach that the Court's decision in *Ransom* has a large measure of symmetry with the factual circumstances presented in this case. First, both the circumstances in this case and in *Ransom* involve the situation where a debtor is seeking to claim a type of expense under the 'means test' for which the debtor has no legal obligation to pay. Specifically, both cases involve the ownership costs associated with what is considered essential property, with *Ransom* involving a vehicle, while at issue in this case is a residence.

Second, whether it is the allowance of an expense for transportation or housing, authorization for both types of deductions is derived from the same source: the Local Standards, as made applicable to this case by § 707(b)(2)(A)(ii)(I). Finally, under the Local Standards, the allowance afforded to a debtor for both housing and transportation expenses is divided into two similar components: One involving the ownership/acquisition costs for the property, the other involving the attendant costs associated with the property. In this case, as in *Ransom*, the issue before the Court concerns the former component, the ownership/acquisition costs for the property.

The legal reasoning of the Supreme Court's decision in *Ransom* can also be easily extended to this matter. Of primary importance, the Supreme Court's determination in *Ransom*, that a debtor

Page 18

may not deduct the ownership cost of a vehicle where the debtor does not actually make a loan or lease payment for the vehicle, was foremost premised on its interpretation of the ordinary meaning of the word "applicable" as used in § 707(b)(2)(A)(ii)(I). In this regard, the word "applicable" qualifies whether a debtor is entitled to a deduction under the Local Standards, with § 707(b)(2)(A)(ii)(I) specifying that the "debtor's monthly expenses shall be the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards . . . ." (emphasis added).

In addressing the term "applicable," as used in § 707(b)(2)(A)(ii)(I), the Supreme Court explained:

> The key word in this provision is 'applicable': A debtor may claim not all, but only "applicable" expense amounts listed in the Standards. Whether Ransom may claim the $471 car-ownership deduction accordingly turns on whether that expense amount is 'applicable' to him.

> Because the Code does not define 'applicable,' we look to the ordinary meaning of the term. 'Applicable' means "capable of being applied: having relevance" or "fit, suitable, or right to be applied: appropriate." So an expense amount is "applicable" within the plain meaning of the statute when it is appropriate, relevant, suitable, or fit.

> What makes an expense amount 'applicable' in this sense (appropriate, relevant, suitable, or fit) is most naturally understood to be its correspondence to an individual debtor's financial circumstances. Rather than authorizing all debtors to take deductions in all listed categories, Congress established a filter: A debtor may claim a deduction from a National or Local Standard table (like '[Car] Ownership Costs') if but only if that deduction is appropriate for him. And a deduction is so appropriate only if the debtor has costs corresponding to the category covered by the table—that is, only if the debtor will incur that kind of expense during the life of the plan. The statute underscores the necessity of making such an individualized determination by referring to 'the debtor's applicable monthly expense amounts,' § 707(b)(2)(A)(ii)(I) – in other words, the expense amounts applicable (appropriate, etc.) to each particular debtor. Identifying these amounts

Page 19

requires looking at the financial situation of the debtor and asking whether a National or Local Standard table is relevant to him.

*Ransom*, 131 S.Ct. at 724 (internal quotations and citations omitted). This holding easily lends itself to the following conclusion:

Because the ownership costs for a residence – *i.e.*, the property's mortgage/rent expense – is likewise authorized under the Local Standards, and is thus qualified by the word "applicable," a debtor may only deduct a mortgage/rent expense under the 'means test' if the "deduction is appropriate for him," meaning that the debtor personally incurs a cost for that expense category. In the words of the *Ransom* Court: "a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category." *Id.* at 725.

It is the Debtor's position, however, that the Court's decision in *Ransom* is confined and "specific to the allowance of the Local Standard motor vehicle ownership deduction allowance on the Means Test." (Doc. No. 52, at pg. 4). In the Debtor's words:

> Its [sic] only logical that if the basis for a [sic] expense deduction as car ownership consists of loan and lease information, then to be an applicable expense the debtor has to have a loan or lease payment. However, it does not lead to the same conclusion for housing expense. The Local Housing expense deduction is not based on figures derived from mortgage loans. It is beyond the realm of logic and credulity that a person does not qualify for an applicable housing expense without having a mortgage or lease payment. The only persons without any housing expense would be the homeless and certainly Congress in enacting the BAPCPA did not intend such a conclusion.

*Id.* at pg. 3-4. The Court, however, is not persuaded by this argument.

To conclude otherwise would require this Court to afford the term "applicable" as used § 707(b)(2)(A)(ii)(I) a different meaning, dependant upon whether, under the Local Standards, a

deduction was being utilized for the cost of acquiring a residence or, instead, was being utilized as deduction attributable to the cost to own a vehicle. There is nothing in the Court's decision in *Ransom* to suggest that such a distinction should be made or that the Court's holding in *Ransom* should be given such a narrow reading. To the contrary, the Court in *Ransom* supported its decision by reference to other supporting principles of bankruptcy law, principles which apply regardless of whether one is addressing the ownership/acquisition costs (or the lack thereof) of a vehicle or a residence.

First, the Court in *Ransom* observed that "[b]ecause Congress intended the means test to approximate the debtor's reasonable expenditures on essential items, a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category. If a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." *Id.*

Second, the Court noted that its reading of the term "applicable" in § 707(b)(2)(A)(ii)(I) furthers the purpose of the 'means test' – that of ensuring that a debtor repays their debts when they have the ability to do so. As stated in the Court's decision:

> Finally, consideration of BAPCPA's purpose strengthens our reading of the term 'applicable.' Congress designed the means test to measure debtors' disposable income and, in that way, to ensure that they repay creditors the maximum they can afford. This purpose is best achieved by interpreting the means test, consistent with the statutory text, to reflect a debtor's ability to afford repayment. Requiring a debtor to incur the kind of expenses for which he claims a means-test deduction thus advances BAPCPA's objectives.

*Id.* (internal quotations and citations omitted).[9]

---

[9]

BAPCPA, as delineated in this quotation, refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Public Law 109–8, 119 Stat. 23. This Act gave rise to the

Page 21

Third, the IRS guidelines for the Local Standards, which the Court in *Ransom* consulted and found supported its conclusion, prohibit a debtor from claiming an expense for which the debtor is not actually making a payment. Specifically, in these guidelines, it is provided that for a debtor's housing and transportation expenses "[t]he taxpayer is allowed the local standard or the amount actually paid, *whichever is less.*" IRM at 5.15.1.7 ¶ 4 (emphasis added).

Finally, contrary to the Debtor's position, homeless persons would not constitute the only class of debtors who could be denied the housing allowance for one's rent/mortgage, The Debtor, herself, who is not homeless, represents a perfect example of this truism. In this regard, it must be remembered that the position put forth by the UST does not seek to deny the Debtor her non-mortgage expense under the Local Standards – *e.g.*, those expenses associated with maintaining a residence such as utilities and the like. The same was true in *Ransom* where the debtor was allowed, without objection, a deduction under the Local Standards for the operating costs of his motor vehicle.

Unless the context of the decision clearly shows otherwise, this Court, when applying Supreme Court precedent, is not inclined to give the decision a narrow holding. *See Siskiyou Regional Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 549 n.1 (9th Cir. 2009) (even dicta of the United States Supreme Court should not be considered lightly). And for the reasons just set forth, this Court can find no appreciable basis to distinguish the situation presented in this particular case from the issue presented to the Supreme Court in *Ransom*.[10] Consequently, under principles of *stare decisis*, this Court finds that the Supreme Court's decision in *Ransom* applies with equal force to the

---

'means test' of § 707(b)(2).

[10]

This was the same conclusion reached by the bankruptcy court in the case *In re Wilson*, 454 B.R. 155 (Bankr.D.Colo.2011), entered just over a month after the Supreme Court rendered it decision in *Ransom*.

Page 22

situation now before the Court. As such, the Court must disallow the Debtor's claim of a $761.00 deduction on line 20B of her 'means test' calculation on Form B22A.

## Summary

In the end, the ultimate question in this matter, as observed by the District Court, is whether the Debtor's means-test calculation crosses the presumptive abuse threshold, as provided in § 707(b)(2)(A)(i)(I), of $195.42 per month. (Doc. No. 84, at pg. 3, fn. 1). In this matter, having disallowed the Debtor a Local Standards deduction for housing in the amount of $761.00 per month, the presumption of abuse arises, notwithstanding the dispute between the Parties concerning the 'marital adjustment.'

In particular, the UST's calculation under the 'means test,' which resulted in a monthly 'disposable income' of $597.27, can only be adjusted downward by at most $334.00, to $263.27, representing the difference between the Debtor's claim of a 'marital adjustment' in the amount of $3,473.00 and the UST allowance of a 'marital adjustment' in favor of the debtor in the amount of $3,138.87. Accordingly, as the amount of $263.27 per month exceeds the abuse threshold of $195.42 per month, the presumption of abuse arises in this case for purposes of § 707(b)(2).

In reaching these conclusions, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 23

In re Shannon Q. Sturm
Case No. 10-34829

Accordingly, it is

**ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(2), be, and is hereby, GRANTED.

**IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Tuesday, October 9, 2012, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: September 21, 2012

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 24

# *CERTIFICATE OF SERVICE*

Copies were mailed this 21st  day of September, 2012 to:


Chase Auto Finance
201 N. Central Ave, Floor 11
Phoenix, AZ 85004

Douglas A Dymarkowski
5431 Main Street
Sylvania, OH 43560

Shannon Q Sturm
4405 283rd St.
Toledo, OH 43611

Gary E Horn
4325 Willys Pkwy
Toledo, OH 43612

Amy Good ust08
201 Superior Avenue, Suite 441
Cleveland, OH 44114

Derrick Rippy ust11
201 Superior Avenue, Suite 441
Cleveland, OH 44114


_____/s/Jennifer S Huff_____
Deputy Clerk, U.S. Bankruptcy Court